IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No.  4:11-CV-72-FL

LULA MARLENE HYATT,    )
    )
      Plaintiff,    )
    )
v.    )
    )    **MEMORANDUM &**
    )    **RECOMMENDATION**
MICHAEL J. ASTRUE,    )
Commissioner of Social    )
Security,    )
    )
      Defendant.    )
_____    )

      This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings.  (DE's-32 & 37).  Plaintiff has filed a response (DE-40), and the time for filing any further responses or replies has expired.  Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation.  For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-32) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-37) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**<u>Statement of the Case</u>**

      Plaintiff applied for Disability Insurance Benefits ("DIB") on January 12, 2009 alleging that she became unable to work on December 31, 2002.  (Tr. 114-118).  Plaintiff was insured for DIB through June 30, 2008.  *Id.* at 16, 127, 129.  This application was denied initially and upon

1

reconsideration. *Id.* at 16. A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated November 22, 2010. *Id.* at 16-23. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on March 11, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-4. Prior to the Appeals Council's determination, Plaintiff submitted additional records from Moore Orthopedics and Sports Medicine, Carteret General Hospital, and Carolina Craniospinal Neurosurgery. *Id.* at 2. *See also*, (DE-34, pg. 3). The Appeals Council ultimately determined that these records did not affect the ALJ's decision. (Tr. 2).

Subsequent to the ALJ's decision, Plaintiff applied for Supplemental Security Income. (DE-34, pg. 3). This application was approved on February 8, 2011. (DE-34-1, pg. 2). Likewise, Plaintiff was found disabled for Medicaid benefits on February 24, 2010. (DE-34-2, pg. 2). Plaintiff filed the instant action on May 9, 2011. (DE-4).

**<u>Standard of Review</u>**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of

2

the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." <u>Craig</u>, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

> <u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001).

3

Plaintiff was insured for DIB through June 30, 2008. *Id.* at 16, 127, 129. Therefore, the inquiry is whether substantial evidence supports the ALJ's finding that Plaintiff's impairments were not disabling on or before June 30, 2008.

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity through her date last insured of June 30, 2008. (Tr. 18). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) hepatitis C; 2) gastrointestinal history; 3) alcohol abuse; and 4) status-post recent gall bladder surgery *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Based on the medical record, the ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work. *Id.* at 19.

The ALJ then determined that Plaintiff was capable of performing her past relevant work as a waitress and caregiver. *Id.* at 22. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time prior to June 30, 2008. *Id.* at 22-23. These determinations were supported by substantial evidence, a summary of which now follows.

Plaintiff was examined on January 31, 2005 after being involved in a motor vehicle accident on January 25, 2005. *Id.* at 215. She was treated for neck soreness. *Id.*

On March 23, 2005, Plaintiff was examined by Dr. Brian Lowry. *Id.* at 206. She complained of headache and nausea. *Id.* Upon examination, Plaintiff was able to move "all extremities with normal range of motion and without difficulty." *Id.* at 207. Likewise, Plaintiff had full motor strength in all extremities. *Id.* Ultimately, Plaintiff was diagnosed with: 1) cephalgia; 2) nausea; and 3) gastroesophageal reflux disease. *Id.* at 208.

4

Plaintiff was examined for "evaluation of a choking sensation" on April 20, 2005. *Id.* at 214. Plaintiff had slight hoarseness, some abdominal pain, and was vomiting two to three times a week. *Id.* The examining physician opined that Plaintiff was "drinking a great deal." *Id.* It was recommended that Plaintiff undergo an upper endoscopy. *Id.*

On April 27, 2005, Plaintiff underwent an upper endoscopy. *Id.* at 213. Her esophagus and stomach were normal. *Id.* Plaintiff's sister was with her and confirmed that Plaintiff "drinks far in excess." *Id.* During her examination, Plaintiff had a tremor from her drinking. *Id.*

Plaintiff was treated at Carteret General Hospital on August 17, 2005. *Id.* at 195. She had full range of motion of all extremities. *Id.* A chest x-ray was normal. *Id.* at 205. After examination, Plaintiff was diagnosed with: 1) acute tremor; 2) tachycardia; and 3) alcohol abuse and possible dependence. *Id.* at 196. She was discharged home in good condition. *Id.*

Plaintiff was admitted to the Carteret General Hospital on February 10, 2006 with chest pain, shortness of breath, nausea and vomiting. *Id*. at 347. On February 13, 2006, Plaintiff underwent an exercise stress test. *Id.* at 389. Plaintiff demonstrated fair aerobic exercise capacity. *Id.* A esophagogastroduodenoscopy and colonoscopy were performed on February 14, 2006. *Id*. at 385-387. She tolerated these procedures well. *Id.* A CT-scan revealed two small polypoid lesions in Plaintiff's colon. *Id.* at 405. It was noted that these lesions could possibly be colonic polyps. *Id.* An upper GI was "essentially normal." *Id.* at 404. Plaintiff was discharged on February 15, 2006, and instructed to follow up with her primary care provider. *Id*. at 347. It was also noted that Plaintiff "will need to follow up with outpatient alcohol abuse." *Id*.

During a February 27, 2006, examination, Plaintiff "had no further [gastrointestinal] complaints." *Id.* at 212. Plaintiff had "an odor of distilled spirits on her breath" and was

5

"somewhat shaky." *Id.* Finally, Plaintiff complained of knee pain. *Id.*

On March 18, 2006, Plaintiff complained of dizziness, headache, weakness and "feeling poorly." *Id.* at 211. It was noted that Plaintiff "recently was discharged from the hospital with a diagnosis of GI bleed from esophagitis and known gastritis . . .[s]he went home . . . [and] continued to drink and smoke." *Id*. at 349. Plaintiff was diagnosed with "GI bleed with anemia", and was transported to an emergency room for further evaluation. *Id.* at 211, 349. Dr. Martin Skulskie observed that Plaintiff used "Goody Powders" for chronic headaches, although no foot, leg or back pain was mentioned. *Id.* at 352. Upon examination, Plaintiff had full muscle strength. *Id.* at 353. Plaintiff was diagnosed with: 1) GI bleed secondary likely to Aspirin and alcohol abuse; and 2) Recent EGD positive for gastritis. *Id.*

Plaintiff underwent an esophagogastroduodenoscopy on March 21, 2006. *Id.* at 359. She tolerated the procedure well. *Id.* at 360. Her postoperative diagnoses were: 1) duodenitis; 2) large duodenal diverticula; 3) irregular GE junction; 4) gastritis; 5) patulous GE junction; 6) irregular Z line consistent with Barrett's esophagus; and 7) no evidence of esophageal varices. *Id.* at 359. Plaintiff was advised "once again to avoid the use of aspirin and NSAID type products." *Id.* at 360.

On April 15, 2006, Plaintiff experienced rapid heart rate, dizziness and sinus problems. Upon examination, it was noted that Plaintiff "looked very good compared to the last time I saw her" and that Campral was "helping a great deal." *Id.* at 210. Plaintiff was diagnosed with: 1) "tachycardia, dizziness"; and 2) history of peptic ulcer disease. *Id.*

Plaintiff received emergency room treatment on June 1, 2006, complaining of chest pain. *Id.* at 494. She had good range of motion of all extremities. *Id.* at 495. Ultimately, Plaintiff was diagnosed with chest pain and palpitations. *Id.*

6

During a March 7, 2008 examination, Plaintiff's past medical history was described as "remarkable for gastroesophageal reflux disease, prior hysterectomy, and appendectomy." *Id.* at 477. No prior foot, leg or back pain was mentioned. *Id.* Upon examination, Plaintiff demonstrated "some mild low back pain with range of motion." *Id.* at 478. Plaintiff had full motor strength in all extremities, and her gait was normal. *Id.*

Dr. Sharon Skoll completed a Psychiatric Review Technique form on March 3, 2009. *Id.* at 219. It was determined that Plaintiff's history of alcohol abuse did not precisely satisfy the diagnostic criteria of Listing 12.09. *Id.* at 227. Ultimately, Dr. Skoll indicated that "there was insufficient evidence to assess functional limitations due to mental impairment . . ." *Id.* at 231.

On October 1, 2009. Dr. Nancy Herrera completed a Psychiatric Review Technique. *Id.* at 233. She opined that Plaintiff's alcohol abuse and dependence did not precisely satisfy the diagnostic criteria of Listing 12.09. *Id.* at 241. Dr. Herrera stated that there was insufficient evidence as of Plaintiff's date last insured to assess Plaintiff's mental RFC or the credibility of Plaintiff's statements. *Id.* at 245.

Dr. Frank Virgili stated on October 6, 2009 that there was insufficient evidence to determine Plaintiff's physical RFC as of her date last insured. *Id.* at 254.

Plaintiff was treated at Carteret Foot & Ankle Specialists on April 13, 2010. *Id.* at 410. She complained of painful plantar warts which made it difficult for her to walk. *Id.* It was noted that Plaintiff's "past medical history is unremarkable." *Id.* Upon examination, Plaintiff demonstrated "normal strength, range of motion, and alignment for all joints . . ." *Id.*

During office visits with Dr. Dean Marson between April 15, 2010 and September 7, 2010, Plaintiff's past medical history was described as:   1) depression; and 2) acid reflux disease. *Id.* at 320-330. Plaintiff had full motor strength in her extremities during these examinations. *Id.* at

7

322, 329.

Dr. Robert Brockman examined Plaintiff on October 21, 2010. *Id.* at 514. Plaintiff stated that "she has been having [r]ight leg and foot pain for the past 7-8 [years]" which was progressively getting worse. *Id.* She had good strength in her upper and lower extremities bilaterally. *Id.* at 515. Plaintiff had a significant Valgus deformity of her right foot. *Id.*

Plaintiff testified that she stopped working in 2005 because she was having trouble with her feet. *Id.* at 31. Specifically, Plaintiff indicated that she had blisters on her feet that would bleed if anything touched them. *Id.* This caused her legs, knees and hips to hurt as well. *Id.* She stated that she last drank alcohol in 2006. *Id.* at 33-34. Plaintiff testified that she was incapable of lifting "four or five pounds", and that at times she had difficulty lifting her purse. *Id.* at 34. According to Plaintiff, she was suffering from arthritis in her hand. *Id.* She indicated she could not stand for more than 15 or 20 minutes at a time. Specifically, Plaintiff testified that she alternated between sitting and standing and laying because each position eventually became uncomfortable. *Id.* at 35. Plaintiff stated that her pain never goes away. *Id.* at 36. Neighbors assist Plaintiff in cleaning her home. *Id.* at 38. Plaintiff does not cook. *Id.* In addition, Plaintiff stated that she was very depressed. *Id.* at 38-39.

Angela Salter, Plaintiff's best friend, also testified at the hearing in this matter. *Id.* at 42. She stated that Plaintiff had difficulty walking in 2008 and that Plaintiff could not "walk very long." *Id.* at 43. Specifically, Ms. Salter testified that Plaintiff could only walk for about 10 or 15 minutes at a time. *Id.* at 44. Ms. Salter also testified that Plaintiff could not lift anything "heavy." *Id.*

Based on this record, the ALJ made the following specific findings in addition to those previously noted:

8

At the hearing, the claimant stated that she last worked as a waitress in 2005 and had not looked for work since that time. It was her testimony that she stopped working because of foot and knee pain. She indicated that she was not currently drinking and that she stopped in 2006. The claimant indicated that she was unable to work because of depression and arthritis, which affected her feet, knees, hips, and hand. She testified that she was diagnosed with hepatitis C and that she had pain and fatigue. It was her report that she was limited to lifting less than 5 pounds and standing and sitting 15 to 20 minutes. Angela Salter, the claimant's friend, testified that she had known the claimant for 20 years and saw her about three times weekly. It was her report that she knew the claimant had recently undergone gallbladder surgery and that she had lost a lot of weight. She stated that her friend stopped drinking 5 or 6 years ago.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .

In terms of the claimant's alleged impairments, the Administrative Law Judge finds that the overall objective evidence does not support disability, prior to the date last insured for benefits. It was noted that the claimant was drinking heavily and that her many of her problems were related to her heavy alcohol consumption. In emergency room reports dated in March 2008 and August 2009, it was noted that the claimant continued to drink alcohol (Exhibit l4-F). Her gallbladder problems and surgery with weight loss occurred while after her date last insured for benefits. The claimant alleged multiple problems; however, there was little evidence of treatment for arthritis or depression prior to June 30, 2008. The claimant sought treatment for her leg and foot discomfort in 2010. She testified that she did not seek employment after 2005; however, this is not an indication of inability to work.

As for the opinion evidence, there was no supporting evidence prior to the date last insured for benefits. The Administrative Law Judge gives no weight the Exhibit l5-F as the claimant only recently started psychotherapy at the facility. In addition, there was no supporting evidence for the findings.

In sum, the above residual functional capacity assessment is supported by the objective evidence, prior to the date last insured for benefits . . .

In comparing the claimant's residual functional capacity with the physical

9

and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed, prior to June 20, 2008. There were no supporting medical records, which indicated that the claimant had any impairment preventing her from her past work or other work existing in significant numbers in the national economy.

*Id.* at 20-22.

Plaintiff submitted additional evidence to the Appeals Council after the ALJ entered his decision. Specifically, on June 3, 2005, Plaintiff complained of toe pain and right foot pain. *Id.* at 518. She was diagnosed with hammertoes and other foot deformities. *Id.* Physical examination showed normal vascular activity and neurological signs. *Id.* at 519. There were no notations of lesions, atrophy, or rashes, nor was there any indication of abnormal gait. *Id.* It was recommended that Plaintiff use shoe padding, toe splints, and custom toe spacers. *Id.* at 520. Surgery was "discussed", and it was noted that Plaintiff would follow up. *Id.* The Appeals Council determined that this evidence did not "affect the decision about whether [Plaintiff] was disabled at the time . . . [Plaintiff was] last insured for disability benefits." *Id.* at 2.

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what

Plaintiff requests this Court do, her claims are without merit. The undersigned will nonetheless address Plaintiff's specific assignments of error.

**The ALJ properly assessed Plaintiff's foot, leg and back pain**

Plaintiff argues that "the ALJ failed to mention evidence of plaintiff's foot deformities and foot, leg and back pain." (DE-34, pg. 8). The undersigned disagrees. The ALJ considered evidence showing that Plaintiff began to complain of and seek treatment for back and foot pain in 2010. *Id*. at 22. Records relating to the period prior to June 30, 2008, however, do not show any limitations related to these conditions.

Furthermore, Plaintiff argues that she submitted additional evidence to the Appeals Council which undermines the ALJ's determination. When the Appeals Council incorporates new evidence into the administrative record, the reviewing court considers the record as a whole, including the new evidence, to determine whether the Commissioner's decision is supported by substantial evidence. Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th 1991). Generally, the Appeals Council is not required to articulate a detailed assessment of any additional evidence submitted by a claimant. Freeman v. Halter, 15 Fed. Appx. 87 (4th Cir. 2001)(unpublished); Hollar v. Commissioner of Social Sec. Admin., 194 F.3d 1304 (4th Cir. 1999)(unpublished). The undersigned has already summarized the evidenced presented by Plaintiff to the Appeals Council, and finds that the ALJ's findings are supported by substantial evidence even after this additional evidence is considered.

Specifically, Plaintiff reported that she took BC Powder for headaches, with no mention of foot or back symptoms. (Tr. 210). A March 23, 2005 examination showed a full range of motion in all extremities with no difficulty, full motor strength, intact sensation, and a normal gait. *Id*. at 207. Examinations performed on February 10, 2006, showed no edema or clubbing of the

11

lower extremities, a normal range of motion, and no back discomfort. *Id*. at 374-380. Plaintiff was able to complete an exercise stress test on February 13, 2006, and there is no indication she complained of foot or back pain impairing her ability to exercise. *Id*. at 389. The test showed that Plaintiff had a fair aerobic/exercise capacity. *Id.* A June 1, 2006, examination showed a good range of motion in all extremities. *Id*. at 495. A March 7, 2008, examination showed some mild back pain with range of motion, but full motor strength and a normal gait. *Id*. at 478. Accordingly, this assignment of error is without merit.

**The ALJ properly assessed Plaintiff's credibility**

Next, Plaintiff argues that the ALJ "committed harmful error by not properly determining plaintiff's credibility." (Tr. 34, pg. 10). The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig , 76 F.3d at 593-596. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the

available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ pointed out that the objective evidence did not support Plaintiff's allegations of disability prior to June 30, 2008 (Tr. 22). Plaintiff rarely mentioned foot or back pain to her doctors, and physical examinations consistently showed a normal gait, full range of motion, normal sensation, and no back tenderness (Tr. 194, 207, 350, 353, 356, 478, 494- 95). *See* Craig, 76 F.3d at 595 (while a claimant's subjective allegations may not be dismissed solely because they are not supported by objective factors, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence"). Thus, the ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Therefore, this assignment of error is without merit.

**Plaintiff's additional evidence does not merit remand**

Finally, Plaintiff has submitted additional evidence in support of the instant motion which she contends is new and material evidence warranting remand. To merit remand, this evidence must meet the requirements of sentence six of 42 U.S.C. § 405(g) ("sentence six").

13

Sentence six permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). There are accordingly three distinct requirements under sentence six. *See, e.g.*, Nuckles v. Astrue, 2009 WL 3208685, at *4 (E.D.N.C. Oct. 5, 2009). First, the evidence must be new. Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record. Wilkins, 953 F.2d at 96. Evidence that was available during the administrative hearing but not submitted does not qualify as new evidence. Wilkins v. Sec'y of Health and Human Servs., 925 F.2d 769, 774, *rev'd on other grounds*, 953 F.2d 93 (4th Cir. 1991)(*en banc*).

Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *See*, Wilkins, 953 F.2d at 96. Evidence is not material if it does not relate to the time period that was before the Commissioner. Edwards v. Astrue, 2008 WL 474128, at *9.

Third, there must be good cause for failing to submit the evidence earlier. This requirement for good cause was added by Congress in 1980. *See*, Social Security Disability Amendments of 1980, P.L. 96-265 § 307, 94 Stat. 441 (1980). The courts have recognized that Congress' intent was to permit remands pursuant to sentence six on a very limited basis. Rogers v. Barnhart, 204 F.Supp.2d 885, 892 (W.D.N.C. 2002).

Thus, the undersigned must determine whether the additional evidence submitted by Plaintiff was "new and material." The evidence submitted by Plaintiff does not meet this standard. There is little indication in these records that they relate back to the relevant time period. Furthermore, these records, at least in part, contradict Plaintiff's allegations. During her December 2010 examination at Moore Orthopedics & Sports Medicine, Plaintiff reported that she

14

has never had any back trouble. (DE-34-3, pg. 11). Physical examination showed a normal gait and station, an excellent range of motion with no hip pain, and no knee instability. *Id*. at 12. Plaintiff had a good range of motion in her lumbar spine, with a negative straight raise leg test and no sacroiliac joint pathology. *Id*. Plaintiff had no right leg tenderness and a neurovascular examination was "excellent." *Id*. A January 2011 examination acknowledged her right foot deformity, but showed good strength in the lower extremity. *Id*. at 15. These records would not alter the ALJ's decision and are not "new and material" evidence warranting remand. Therefore, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-32) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-37) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, March 20, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE